**Robert WINTHROP and Margaret S. Winthrop, Plaintiffs,**

v.

**Raphael MEISELS, District Director of Internal Revenue, Defendant.**

United States District Court
S. D. New York.
Dec. 30, 1959.

Shearman & Sterling & Wright, New York City, for plaintiffs, Charles C. Parlin, Margaret Smith, Judith S. Leonard, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty., for the Southern Dist. of New York, New York City, for defendant, Joseph P. Altier, Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

These are cross-motions for summary judgment. The facts are not in dispute. Plaintiffs took a $19,532.76 charitable deduction on their 1954 joint income tax return. Defendant disallowed the deduction and assessed a deficiency which plaintiffs paid. Plaintiffs thereupon brought this suit for refund of the sum paid. Both parties have agreed that the

issue before me is whether the release in 1954 by plaintiff Robert Winthrop, hereinafter the grantor, of his right to designate which of a class of charitable organizations would receive 90% of the 1957 income from a trust created in 1952, completed his gift of such income to charity and entitled plaintiffs in 1954 to a charitable deduction within the meaning of section 170 of the Internal Revenue Code of 1954, 26 U.S.C. § 170.

In 1952 the grantor created an irrevocable *inter vivos* trust with State Street Trust Company, Boston, Massachusetts, as trustee. Under paragraph (b) of Article II of the trust agreement, the pertinent text of which appears in the margin,* the income for twenty years would go to charitable organizations or for charitable purposes described in Section 23(o) of the 1939 Internal Revenue Code, 26 U.S.C. § 23(o) as this section would from time to time exist. The grantor reserved to himself until December 31, 1967, the power to designate which charitable organizations or purposes within the limited group were to receive, and the proportions in which they were to receive, 90% of the income of the 1952 trust for the years prior to 1968. The remaining income during the first twenty years of the trust was distributable among the class of charitable organizations and purposes as a "Distribution Committee" should determine. The grantor was not a member of this committee. The trust agreement provides that after the expiration of the twenty year period the principal and any accumulated income were to be distributed to certain male members of the Winthrop family not including the grantor.

Section 170(a) (1) of the Internal Revenue Code of 1954 states, "There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year." On December 20, 1954 the grantor relinquished his power to designate the recipients of 90% of the trust income received in the calendar year 1957. On his joint income tax return with his wife for the year 1954 there was deducted as a contribution to charity the sum of $19,532.76 representing the discounted value of 90% of the dividends which it was contemplated would accrue upon the trust property in 1957. Plaintiffs contend that the relinquishment completed the gift to charity by the grantor and entitled them to a 1954 income tax deduction on the theory that "payment" was made in that year.

The question is one of novel impression. Plaintiffs' position would equate the case to one where a donor cut the coupons off a government bond, gave the bond to a charitable corporation in 1952 and, in 1954, gave to the same corporation the 1957 coupons. There could be no doubt that the donor would be entitled to deduct from his gross income for 1952 the face amount of the bond discounted for postponement of payment to maturity and to deduct from his gross income for 1954 the discounted value of the coupons due in 1957. Ought the same result to follow here where, instead of retaining evidences of debt, like coupons, the grantor retained the power to nominate the income beneficiaries from the eligible class of charities?

The answer depends upon the value to the grantor of the reservation. The right

---

* "(b) * * * During the first twenty years of the Trust Term, the Trustee shall pay over and distribute the net income therefrom to and among such charitable organizations or for charitable purposes described in Section 23(o) of the United States Internal Revenue Code (as said section shall from time to time exist), hereinafter referred to as 'Charitable Organizations', and in such shares or proportions as the Distribution Committee, to be established as provided in Article III hereof, shall appoint, in the manner hereinafter specified in Article III, Section (e) hereof, Provided, However, that the Settlor reserves until December 31, 1967, the power to appoint and direct, by an instrument in writing signed by him and delivered to the Trustee, the Charitable Organizations to receive, and the proportions in which they shall receive, 90% of the net income of said trust received by the Trustee during each calendar year prior to 1968."

to nominate income beneficiaries from among an eligible class of non-charities has a cash value. One eligible for nomination could afford to pay a large percentage of the benefit to induce the nomination. Such a transaction is not unlikely between a grantor whose fortunes have ebbed since the creation of the trust and a non-charity beneficiary. It seems, however, to be the view of Congress that it is unlikely in the case of charity beneficiaries.

The Clifford rules, so called from the case of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, which inspired them, seem to place a much higher value on the right to nominate from among non-charities than from among charities. One of these Clifford rules, section 674 of the Internal Revenue Code of 1954, 26 U.S.C. § 674, which is quoted in part in the margin,** states in subdivision (a) that the grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the income is subject to a power of disposition exercisable by the grantor. Then subdivision (b) (4), headed "Power to allocate among charitable beneficiaries", provides that the grantor shall not be treated as the owner where the power to determine the beneficial enjoyment of the income is irrevocably payable "for a purpose specified in section 170(c) (relating to definition of charitable contributions)". Since there is no such exception for the power to allocate income among non-charity beneficiaries there is an implication that, in the case of charitable contributions alone, the power to allocate does not make the grantor an owner.

By analogy I hold that it was not the intention of Congress that when a grantor relinquished a power of such slight value as that to allocate income among charities it should constitute a "payment" by the grantor to charity.

Judgment is directed dismissing the complaint.

** "§ 674. *Power to control beneficial enjoyment*

(a) *General rule.*—The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party.

"(b) *Exceptions for certain powers.*— Subsection (a) shall not apply to the following powers regardless of by whom held:

* * * * *

"(4) *Power to allocate among charitable beneficiaries.*—A power to determine the beneficial enjoyment of the corpus or the income therefrom if the corpus or income is irrevocably payable for a purpose specified in section 170(c) (relating to definition of charitable contributions). * * *"